Eric ROBINSON, Petitioner-Appellant,

v.

Donald E. PERCY, Secretary, Department of Health and Social Services, Respondent-Appellee.

No. 83–1665.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1983.

Decided June 28, 1984.

Donna L. Hintze, Asst. State Public Defender, Milwaukee, Wis., for petitioner-appellant.

Jerome S. Schmidt, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for respondent-appellee.

Before CUMMINGS, Chief Judge, and BAUER and COFFEY, Circuit Judges.

BAUER, Circuit Judge.

Eric Robinson appeals from the district court's order denying his petition for a writ of habeas corpus. Robinson contends that his conviction for first degree murder was unconstitutional because the Wisconsin trial court did not suppress statements which Robinson claims were obtained in violation of his fifth and sixth amendment rights. We affirm the denial of Robinson's petition.

I

A. The Arrest and Interrogation in New Hampshire

On August 25, 1979, Melvin Hunt was found dead of gunshot wounds in Milwaukee. Two days later, the Milwaukee police filed a complaint charging Robinson with Hunt's murder and issued a fugitive warrant for Robinson's arrest. On November 9, 1979, police in Portsmouth, New Hampshire, arrested Robinson and took him to

their police station. Robinson initially insisted that he was Victor Robinson (his brother), but later admitted that he was Eric Robinson after the police told him he would be fingerprinted. The arresting officer read Robinson his *Miranda* rights, asked if he understood those rights, and told him that there was an outstanding warrant for his arrest from Wisconsin.

Shortly thereafter, a detective photographed Robinson and again read him his *Miranda* rights. After determining that Robinson understood his rights, the detective asked Robinson if he wished to waive his rights and make a statement. Robinson replied that he did not want to talk but instead wanted "to keep to himself" and "do some thinking." The detective then fingerprinted Robinson and asked him several identification questions from the fingerprint information sheet. When the detective asked Robinson his address, he answered that he currently was using no address. The detective next asked Robinson if he had an address in Pennsylvania, to which he responded no, and if he had an address in Wisconsin, to which Robinson responded, "Where's Wisconsin? I've never heard of it." The information sheet also contained a space to list any distinguishing physical characteristics; because the Wisconsin warrant indicated Robinson had a scar on his forehead, the detective examined Robinson's head and noted the scar. Robinson told the detective that he had received the scar when he was pistol-whipped in Milwaukee. Robinson then asked whether Milwaukee had a life sentence for murder, and he stated that even a prisoner serving a life sentence can be released after ten years and three months.

The detective next took Robinson to an interrogation room, where a sergeant and a captain joined them. The detective again read Robinson his *Miranda* rights, asked whether he understood his rights, and asked whether he would sign a form waiving those rights. Robinson refused to sign the form and stated that he did not want to discuss the murder until he talked to a lawyer, but that he did not want to call a lawyer until later. The detective wrote on

the waiver form: "Refused to talk about murder. Wants lawyer." The captain then explained to Robinson that they had received a warrant for his arrest from Milwaukee charging him with first degree murder, and told Robinson that he would be extradited to Milwaukee. The captain next started to discuss his own experiences in Milwaukee, and asked Robinson about how he had gotten to Milwaukee, how long he had been there, and how he had gotten his scar. When Robinson responded that he received his scar when a friend named Hunt hit him in the forehead, the captain asked him additional questions about Hunt. Robinson responded that he went to Milwaukee because Hunt had promised to teach him how to be a pimp, and that he left Milwaukee after Hunt hit him. Robinson then reiterated that he did not want to talk about the murder, and the captain ceased his questioning.

The captain then left the room, and the detective offered to bring Robinson his dinner. When Robinson said he was only thirsty, the detective went to get him a soft drink, leaving Robinson and the sergeant alone in the room. After a few minutes of silence, Robinson suddenly quoted a Bible verse: "Ye shall know the truth, and the truth shall set you free." The sergeant asked Robinson if he had a religious background. Robinson answered that he did, and that he knew something he had to tell somebody. The sergeant suggested that Robinson pray about it. Robinson placed his head in his hands for about a minute, then raised his head and told the sergeant he had to "clear the air" or "get something off his chest." The sergeant told him that that was a personal decision he would have to make for himself.

The detective then returned to the interrogation room with a soft drink for Robinson. Robinson told him that he wanted to talk about the murder, so the detective summoned the captain. Robinson wrote on his original waiver form that he had changed his mind and was willing to talk; after the officers again read him his rights, he signed a second waiver form. Robinson

agreed to allow the officers to tape his confession. On tape, Robinson was given *Miranda* warnings, acknowledged his rights, and agreed to waive them. Robinson then gave a full confession, and reaffirmed his waiver when he finished. Robinson was returned to Wisconsin for trial.

B. The Suppression Hearing and Appeal

Robinson made a pretrial motion to the Wisconsin trial court to suppress the statements he made to the police in Portsmouth. Robinson contended that his statements were involuntary and that he had not waived his right to remain silent and his right to an attorney. After hearing testimony from the Portsmouth police officers and arguments from both parties, the trial court ruled that all of Robinson's statements were admissible. The court found that the questions the detective asked during processing were not interrogation, and thus implicated no fifth or sixth amendment rights. The court labeled the subsequent discussion between the captain and Robinson in the interrogation room "idle conversation," and ruled that Robinson's later confession was made after a valid waiver of his rights. After the trial court made these rulings, Robinson waived his right to a jury trial. The court found him guilty of first degree murder and sentenced him to life imprisonment.

The Wisconsin Court of Appeals affirmed Robinson's conviction in an unpublished order. It agreed with the trial court that the questions asked during processing were not interrogation. The appellate court disagreed, however, with the trial court's characterization of the later discussion between the captain and Robinson as "idle conversation" and ruled instead that the captain's questioning was interrogation in violation of Robinson's fifth amendment privilege against self-incrimination. The court declined to consider whether this questioning also violated Robinson's sixth amendment right to counsel. The court concluded that the admission of Robinson's statements was harmless error, however, because the statements were encompassed in Robinson's subsequent confession, which

was made after he validly waived his fifth and sixth amendment rights.

The Wisconsin Supreme Court denied Robinson's petition for review. Robinson then petitioned the United States District Court for a writ of habeas corpus. The district court stated that it was in "full agreement" with the Wisconsin appellate court's decision and denied Robinson's petition.

## II

The fifth amendment right to remain silent and right to counsel apply when a criminal defendant is the subject of custodial interrogation. The sixth amendment right to counsel applies to all critical stages of the prosecution after the authorities have initiated adversary proceedings against the defendant. This case raises questions of whether Robinson's fifth and sixth amendment rights were violated when the police arrested, processed, and questioned him at the Portsmouth police station.

### A. Questions During Processing

Robinson first contends that his constitutional rights were violated when the detective asked him questions during processing. The Wisconsin courts and the district court below held that the questioning was not interrogation, and thus did not implicate Robinson's constitutional rights.

The fifth amendment privilege against self-incrimination and right to counsel require police to follow certain procedural safeguards during custodial interrogations of a suspect. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Not all police questioning, however, is "interrogation" for fifth amendment purposes. In *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980), the United States Supreme Court defined "interrogation" as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit

an incriminating response from the suspect." This court recently held that *Miranda* does not apply when officers ask a suspect routine processing questions. *United States v. Kane,* 726 F.2d 344, 349 (7th Cir.1984).

■ The questions that the detective asked Robinson were from the standard identification form that the Portsmouth police use when processing arrestees. To the extent that Robinson gave incriminating responses, his answers merely exceeded the scope of the questions. The *Miranda* safeguards do not apply to such volunteered statements. *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1629. Robinson nonetheless claims that the detective deviated from the standard identification questions by asking how Robinson received the scar on his forehead. The trial court, however, found that the detective did not ask Robinson about the scar, but that Robinson volunteered his comment about being pistol-whipped in Milwaukee. Although the record is ambiguous on this matter, we must uphold the trial court's factual findings absent clear error. *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The trial court's conclusion is not clearly erroneous. The questions that the detective asked were not interrogation, and thus Robinson's fifth amendment rights did not apply.

Robinson next contends that the processing questions violated his sixth amendment right to counsel. This right attaches once adversary proceedings are initiated against the accused. *Massiah v. United States,* 377 U.S. 201, 204–05, 84 S.Ct. 1199, 1201–02, 12 L.Ed.2d 246 (1964). Because the Milwaukee police had filed a formal complaint against Robinson, the Secretary concedes that Robinson's right to counsel had attached before he was processed. The sixth amendment guarantee applies, however, only to "critical stages" of the prosecution. *United States v. Wade,* 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967). The state appellate court determined that processing is not a critical stage, and Robinson urges us to overturn this holding.

■ The test for determining whether a proceeding is a critical stage of the prosecution is "whether the presence of [the accused's] counsel is necessary to preserve the defendant's basic right to a fair trial." *Wade,* 388 U.S. at 227, 87 S.Ct. at 1932. To apply this standard, we must "analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Id.* The Supreme Court's application of this test to police identification proceedings is instructive here. For example, in *Wade* the Court held that the potential for misidentification at a pretrial lineup makes it a critical stage at which the accused has a sixth amendment right to counsel. On the other hand, obtaining a handwriting exemplar is not a critical stage because the potential for prejudice is minimal. *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

■ There is nothing inherently adversary when police elicit information from a suspect to help identify him. To complete the booking form, police often take a suspect's fingerprints, photograph him, and ask his name, address, and other routine questions. If this process produces misleading or inaccurate information, the accused's attorney may explain it at trial. *See Gilbert,* 388 U.S. at 267, 87 S.Ct. at 1953. Indeed, asking questions during processing may help police accurately identify a suspect, as here where Robinson initially insisted that he was his own brother. Processing thus may alleviate the potential for misidentification that prompted the Court to hold the pretrial lineup to be a critical stage in *Wade.* Because the risk of prejudice to a defendant during processing is slight, we hold that processing is not a critical stage of the prosecution, and thus Robinson had no sixth amendment right to counsel at that time.

B. Questions in the Interrogation Room

The trial court ruled that the questions the captain asked Robinson about Milwaukee and the murder victim were "idle conversation" that did not violate Robinson's rights. The state appellate court disagreed and held that this questioning was interrogation for fifth amendment purposes. Because Robinson had invoked his right to remain silent, the court reasoned, the questions were unconstitutional and Robinson's responses should not have been admitted at trial. The court concluded, however, that admitting the statements was harmless error.

■ The Secretary first argues that Robinson did not invoke clearly his right to remain silent. Yet the trial court found that when the police in the interrogation room asked Robinson if he wanted to waive his rights and make a statement, Robinson "clearly said that he did not want to talk about the murder." Tr. at 289. The Secretary does not contend that the trial court's finding is incorrect, and thus we agree with the state appellate court that Robinson clearly invoked his right to remain silent.

■ The Secretary next argues that even if Robinson invoked his fifth amendment right, it was only a "selective invocation" that did not extend to matters other than the murder. Because the captain did not ask directly about the murder, the Secretary reasons, the captain honored Robinson's rights. We find this argument unpersuasive. Once an accused invokes his right to remain silent, the police must "scrupulously honor" his request. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). *See also Michigan v. Mosely*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975) (right to remain silent is "right to cut off questioning"). Although the captain did not ask specifically about the murder, his questions centered on why Robinson went to Milwaukee, why he left the city, and his relationship with the victim. Such questions undoubtedly were "reasonably likely to elicit an incriminating response," *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct.

1682, 1689, 64 L.Ed.2d 297 (1980), and thus were interrogation that implicated Robinson's fifth amendment rights. The captain's questions after Robinson invoked his right to remain silent violated his rights.

■ Although Robinson's statements should not have been admitted at trial, we agree with the state appellate court that their admission was harmless error. When unconstitutionally obtained evidence is presented at trial, the state has the burden of proving beyond a reasonable doubt that the error did not contribute to the verdict against the defendant. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Here, the state has met its burden. As discussed below, Robinson's subsequent confession was constitutionally valid. Constitutionally obtained confessions may render previous confessions harmless error. *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972). Whatever impact Robinson's incriminating responses may have had at trial was offset by his subsequent confession, where he admitted that he killed Hunt.

■ Robinson also contends that his statements were inadmissible because they were obtained in violation of his sixth amendment right to counsel. Both the state appellate court and the district court declined to address this issue. As discussed above, Robinson's sixth amendment right had attached. Moreover, the questioning in the interrogation room was a critical stage of the proceedings because the inquiries were likely to elicit incriminating information. *See, e.g., United States v. Henry*, 447 U.S. 264, 270–71, 100 S.Ct. 2183, 2186–87, 65 L.Ed.2d 115 (1980). Robinson thus had a sixth amendment right to legal representation during the interrogation, *see Brewer v. Williams*, 430 U.S. 387, 401, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1977), which was violated when the captain asked questions without the presence of Robinson's attorney.

The standard for determining whether the admission of evidence obtained in viola-

tion of the sixth amendment constitutes harmless error is the same as the fifth amendment test for harmless error. *See, e.g., Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (harmless error standard for violation of sixth amendment right to confrontation); *Hall v. Iowa*, 705 F.2d 283 (8th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983) (sixth amendment right to counsel); *United States v. DiGilio*, 538 F.2d 972 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977) (sixth amendment right to counsel). As discussed above, any impact of Robinson's incriminating responses was offset by his later confession. The admission of Robinson's earlier responses thus was harmless error.

### C. Robinson's Confession

Robinson claims that his taped confession was obtained in violation of his fifth and sixth amendment rights. The trial court and state appellate court held that Robinson validly waived his rights before he confessed. The district court agreed. Robinson urges us to reverse this holding on two different grounds.

■ Robinson first claims that his confession was tainted by his unconstitutionally obtained earlier statements, and thus his confession was inadmissible as "fruit of the poisonous tree." *See generally Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). A statement is inadmissible if it was obtained through the exploitation of a prior, illegally obtained statement. *Brown v. Illinois*, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). But if the totality of the circumstances shows that the accused confessed of his own free will, his confession is admissible even though his earlier statements were procured illegally. *Holleman v. Duckworth*, 700 F.2d 391, 396 (7th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983).

■ In *Holleman*, this court listed several factors that are important in determining whether a prior statement tainted a later one, including the break in time be-

tween the two statements, whether the same conditions that rendered the first statement inadmissible persisted, whether the defendant was given renewed *Miranda* warnings, and whether the defendant initiated contact with the police before making his later confession. Robinson emphasizes that only a couple of minutes elapsed between the captain's illegal questioning and his own confession. Although this was not a lengthy break in time, we believe that several other factors show that Robinson's confession was independent of his earlier statements. First, the captain discontinued his questioning when Robinson reaffirmed his desire not to talk about the murder. The captain then left the room, and the detective told Robinson that it was time for dinner and left to bring Robinson a refreshment. This should have communicated to Robinson that the previous questioning was finished. Second, Robinson himself initiated the confession when he broke the silence and quoted from the Bible. The sergeant's replies were merely innocuous responses to Robinson's volunteered statements. Third, the police repeatedly advised Robinson of his *Miranda* rights after he told them he wanted to confess. Finally, the content of his confession was not directly responsive to any of the captain's earlier questions. This final factor especially distinguishes this case from cases where the illegally obtained earlier statement is a full confession. Based on the totality of the circumstances, we conclude that Robinson's confession was not the product of his earlier interrogation, and thus his confession was not tainted.

■ Robinson next argues that even if his confession was not tainted, he did not waive his rights before confessing. Robinson invoked his fifth amendment right to counsel when he told the police that he did not want to talk to them until he discussed his case with a lawyer. Although an accused who requests counsel generally may not be interrogated until counsel is made available to him, an exception to this rule exists where "the accused himself initiates further communication, exchanges, or con-

versations with the police." *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). As discussed, Robinson initiated the conversation that led to his confession. The Supreme Court in *Edwards* acknowledged that even when the accused initiates the communication, the ensuing conversation often will be "not wholly one-sided, [because] it is likely that the officers will say or do something that clearly would be 'interrogation.' In that event, the question would be whether ... the purported waiver was knowing and intelligent ...." *Id.* at 486 n. 9, 101 S.Ct. at 1885 n. 9. To determine whether the accused understood his waiver, the court must examine the circumstances of the case, including the accused's background and conduct. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The state appellate court relied on the trial court's factual findings to conclude that Robinson's waiver was knowing and intelligent: Robinson was in normal mental and physical condition, he had eleven years of education, he had prior contacts with police, the police used no coercion, and Robinson expressly waived his *Miranda* rights. A lower court's determinations regarding a defendant's waiver are "entitled to substantial deference," *United States v. Springer,* 460 F.2d 1344, 1348 (7th Cir.), *cert. denied,* 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972), and the record fully supports the trial court's findings and the appellate court's conclusions. *See also Sumner v. Mata,* 449 U.S. 539, 546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981) (statute requiring federal courts to give "presumption of correctness" to state court findings in habeas proceedings "makes no distinction between the factual determinations of a state trial court and those of a state appellate court"). We thus affirm the courts' rulings that Robinson's waiver was knowing and intelligent.

▇▇▇▇▇ Robinson finally claims that waiving his rights after receiving his *Miranda* warnings implicated only his fifth amendment rights, not his sixth amendment right to counsel. Robinson urges us to hold that the sixth amendment requires police to give a criminal defendant additional warnings beyond those mandated by *Miranda* before the defendant may waive his sixth amendment right to counsel. We note that the circuit courts have taken different stands on this issue. *Compare, e.g., United States v. Mohabir,* 624 F.2d 1140, 1151–53 (2d Cir.1980) (sixth amendment waiver during post-indictment interrogation must be preceded by federal judicial officer's explanation of right to counsel) *with United States v. Clements,* 713 F.2d 1030, 1036 (4th Cir.1983) (waiver valid only if defendant knows he is under indictment) *with Jordan v. Watkins,* 681 F.2d 1067, 1075 (5th Cir.1982) (*Miranda* warnings sufficient for sixth amendment waiver) *and United States v. Woods,* 613 F.2d 629, 634 (6th Cir.), *cert. denied,* 446 U.S. 920, 100 S.Ct. 1856, 64 L.Ed.2d 275 (1980) (same). We decline to impose a rigid test for determining when the accused validly has waived his sixth amendment right to counsel. Rather, whether the accused has waived his sixth amendment right depends on the individual circumstances of each case. *See, e.g., Estelle v. Smith,* 451 U.S. 454, 471 & n. 16, 101 S.Ct. 1866, 1877 & n. 16, 68 L.Ed.2d 359 (1981); *United States v. Davis,* 604 F.2d 474, 482–83 (7th Cir.1979); *United States v. Springer,* 460 F.2d 1344, 1350–52 (7th Cir.), *cert. denied,* 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972). The facts in the case at hand demonstrate that Robinson's waiver was valid. His background and experience, his physical condition, his knowledge that he had been charged with first degree murder, the fact that he invoked his right to counsel during the initial interrogation and decided to confess only upon reflection, and the lack of police coercion all show that Robinson's waiver was based on an adequate appreciation of the importance of representation by counsel.

For the above reasons, the district court's order dismissing Robinson's petition for a writ of habeas corpus is affirmed.

AFFIRMED.