**UNITED STATES of America ex rel. Harold WILSON, Reg. No. N–24112, Petitioner,**

v.

**Michael O'LEARY, Warden, Stateville Correctional Center, Defendant.**

**No. 87 C 6521.**

United States District Court,
N.D. Illinois, E.D.

March 27, 1989.

Frederick F. Cohn, Cohn & Associates, Chicago, Ill., for petitioner.

Attorney Gen. of Illinois, Chicago, Ill., for respondent.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Petitioner Harold Wilson has appealed to this court from a ruling of Magistrate Bucklo denying his petition for a writ of habeas corpus. *United States ex rel. Wilson v. O'Leary*, No. 87 C 6521, slip op., 1988 WL 135547 (N.D.Ill. Dec. 7, 1988). For the reasons set forth below, this court reverses.

## BACKGROUND

The facts in this case have been fully set forth in an earlier ruling by this court, *United States ex rel. Wilson v. O'Leary*, 682 F.Supp. 944 (N.D.Ill.1988), and in the magistrate's ruling. Briefly, Wilson was arrested by Cook County Deputy Sheriff Allen Hudson at the Toast of the Town Tavern after Deborah Carter identified Wilson as having raped her. Hudson did not inform Wilson of his *Miranda* rights but he did remove him from the tavern and "told him that he was being questioned about an attack that he did upon [a] woman." Tr. 54.

Outside the Tavern, Wilson was taken into an alley and surrounded by a crowd of people, including Ms. Carter's husband. Some members of the crowd then questioned him about the rape. At some point, Deputy Sheriff Hudson took a gun from Wilson and handed it to one of the other men in the crowd (possibly Mr. Carter). Eventually, Wilson told the men that Anthony Dixon was his partner in the rape.

Soon thereafter the Chicago police arrived, and transported Wilson to the police station. At the station, he was questioned twice, first by his arresting officer, Officer Dubois, and then by Assistant State's Attorney Gainer. He informed Officer Dubois that Anthony Dixon was involved in the rape. He later confirmed to ASA Gainer that he had told the crowd outside the tavern that Anthony Dixon was the "other guy." Before both interviews he was informed of his *Miranda* rights and waived them.

Prior to trial, Wilson moved to have his incriminating statements suppressed, arguing that his statements outside the tavern were coerced and that the later statements

at the police station were the fruits of the earlier ones. The trial court ruled, however, that the incident outside the tavern did not amount to an interrogation for constitutional purposes because private citizens did the questioning. In addition, the court found that no physical coercion occurred. Accordingly, the court held that all of the statements Wilson made on the night of his arrest were admissible.

At the subsequent bench trial, the State did not introduce the statements Wilson had made outside the tavern. However, it did introduce the statements Wilson had made to Officer Dubois and to ASA Gainer. It also presented the testimony of Deborah Carter identifying Wilson as having taken part in the rape. The trial court found Wilson guilty of rape, and the Illinois Appellate Court affirmed. *People v. Wilson*, 124 Ill.App.3d 831, 80 Ill.Dec. 175, 464 N.E. 2d 1158 (1984).

Wilson subsequently filed a habeas petition with this court on the grounds that the statements he made to Officer Dubois and ASA Gainer should not have been admitted at trial. In an early ruling, this court held that the trial court erred in finding that the questioning outside the tavern was not a coercive custodial interrogation. The court first found that Deputy Sheriff Hudson's conduct in dragging Wilson into an alley with a crowd of hostile private citizens, and handing a gun to one of those citizens while they fired questions at Wilson about the rape, amounted to a government sanctioned interrogation.[1] The court also found that, although the state trial court had stated that "physical coercion" did not occur, it was clear from the record (as well as the appellate court's ruling) that the activities of Hudson and the others were at least

psychologically and emotionally coercive. The court then held that an evidentiary hearing was needed to determine whether Wilson's statements at the police station were voluntary in light of the incident at the tavern and the surrounding circumstances of the police station questioning.

The parties subsequently consented to have the evidentiary hearing conducted before Magistrate Bucklo, with a right of appeal to this court. Magistrate Bucklo conducted the hearing, and on the basis of the hearing as well as the state court record, ruled as follows.

The magistrate first found that Wilson's statement to Officer Dubois was voluntary, and therefore properly admitted at trial, because the questioning at the police station was sufficiently removed in time, place and circumstances from the incident at the tavern to remove the taint of Wilson's statements there. She then found, however, that Wilson's statement to ASA Gainer should not have been admitted at trial because the statement merely confirmed that Wilson had told the men outside the tavern that he was involved with Anthony Dixon in the rape, and was thus a direct fruit of the inadmissible statements. Nevertheless, she held that a habeas writ should not issue because the inadmissible statement was merely duplicative of the admissible one, and was therefore harmless.

On appeal, Wilson argues that the magistrate erred both in finding the statement to Officer Dubois admissible and in finding that the introduction of the inadmissible statement to ASA Gainer was harmless error. The State, in turn, argues that the

---

1. It is worth noting that because Deputy Sheriff Hudson's testimony regarding his non-verbal conduct outside the tavern unambiguously established a custodial interrogation, there was no need to conduct an evidentiary hearing on this score. Indeed, had an evidentiary hearing been necessary at all, it would have been for the purpose of determining whether or not Hudson had also engaged in verbal questioning. For although the trial court had found that no such questioning took place, that finding was contradicted not only by Wilson's witnesses, but by Hudson himself.

When first asked by the State's attorney whether he "had an occasion to question Mr. Wilson regarding his participation in the rape incident," Tr. 50, Hudson responded, "Yes, I did." *Id.* And when asked whether Wilson had made any statements following this query, Hudson responded, "Yes, he did." Tr. 50. Only later, after Hudson had been asked whether he had read Wilson the *Miranda* warnings and Hudson had admitted that he had not, did Hudson change his tune and insist that he had only asked Wilson his name.

magistrate erred in finding the statement to ASA Gainer inadmissible.

## DISCUSSION

Wilson's first argument on appeal is that this court erred in its original ruling when it set forth the parameters of the evidentiary hearing. The court held that the only question needed to be resolved at the hearing was whether the statements Wilson gave at the police station were voluntary. Wilson, however, insists that a further inquiry was necessary—that is, to determine whether these statements were sufficiently attenuated from his earlier statements outside the tavern.

The Supreme Court has long held that, in the case of a Fourth Amendment violation followed by a confession, "a finding of voluntariness is merely a threshold requirement in determining whether [the] confession may be admitted in evidence. Beyond this, the prosecution must show a sufficient break in events to undermine the inference that the confession was caused by the Fourth Amendment violation." *Oregon v. Elstad*, 470 U.S. 298, 306, 105 S.Ct. 1285, 1291, 84 L.Ed.2d 222 (1985) (citing *Taylor v. Alabama*, 457 U.S. 687, 690, 102 S.Ct. 2664, 2667, 73 L.Ed.2d 314 (1982)).

Prior to *Elstad*, however, it was unclear whether this so-called "fruit of the poisonous tree" doctrine applied as well when the initial government misconduct involved not a Fourth Amendment violation, but instead an unlawful interrogation resulting in an illegally obtained confession. *See* 1 Lefave & Israel, *Criminal Procedure* § 9.5 (1984). Although the Supreme Court had made clear that the fact that an individual has once let the "cat out of the bag" does not "perpetually disable[ ] the confessor from making a usable [confession] after [the unlawful] [conditions] have been removed," *United States v. Bayer*, 331 U.S. 532, 540–41, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947), it had not delineated the proper inquiry for determining whether the subsequent confession was admissible. Was it enough that the second confession was voluntary? Or did the government then have to make some additional showing of attenu-ation between the initial and the subsequent confessions?

The courts of appeals had generally avoided the issue by lumping "voluntariness" and "attenuation" into a single inquiry. They would analyze the conditions surrounding the second confession to determine whether it was attenuated from the original one, but they would then resolve the matter based on whether or not the subsequent confession could be considered voluntary. *See, e.g., Leon v. Wainwright*, 734 F.2d 770 (11th Cir.1984); *United States v. Ayres*, 725 F.2d 806 (1st Cir.), *cert. denied*, 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984); *Holleman v. Duckworth*, 700 F.2d 391, 396 (7th Cir.1983); *United States v. Pierce*, 397 F.2d 128 (4th Cir.1968).

In *Elstad*, the Supreme Court definitively resolved the issue for cases where the initial confession is procured through a violation of the *Miranda* warnings. The Court held that a violation of *Miranda* resulting in a confession does not require that later inculpatory statements made by the defendant be examined under "fruit of the poisonous tree" analysis. Rather, when State officials obtain inculpatory statements from a suspect through violations of the *Miranda* rules but subsequently give the *Miranda* warnings, "thereafter the suspect's choice whether to remain silent should ordinarily be viewed as an 'act of free will.'" *Id.* 470 U.S. at 311, 105 S.Ct. at 1294 (quoting *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)).

Wilson, however, contends that *Elstad* does not apply when the initial interrogation involves, not merely a technical *Miranda* violation, but an actual Fifth Amendment violation as well. *See Hamilton v. Nix*, 781 F.2d 619, 625 n. 7 (8th Cir.1985) (*Elstad* "has no bearing" where the initial interrogation involves "threatening police tactics resulting in an involuntary confession and interrogation"). According to Wilson, the fact that the *Elstad* opinion repeatedly emphasizes that its holding is limited to cases in which no Fifth Amendment violation has occurred demonstrates that when the initial confession re-

sults from actual coercive behavior, the government must show *both* that the subsequent confession was voluntary *and* that there was a break in the chain of events establishing that the second confession was not caused by the first.

This argument rests on a misreading of that opinion. *Elstad* focuses on the appropriate presumption to apply when the initial confession is inadmissible due solely to a violation of *Miranda*. It holds that, in such cases, the usual presumption that the subsequent confession is tainted by the coercive effect of the initial one—and is therefore involuntary and inadmissible—should not apply. It also notes, however, that "[w]hen a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." *Id.* 470 U.S. at 310, 105 S.Ct. at 1293. In other words, where the initial interrogation violates the Fifth Amendment, "a passage of time or break in events [is required] before a second, fully warned statement *can be deemed voluntary.*" *Id.* at 318, 105 S.Ct. at 1297 (emphasis added).

Thus, *Elstad* confirms (albeit in dicta) that, in the successive confession context, "voluntariness" analysis controls: The court must determine whether, in light of all of the events between the initial and the subsequent confessions, the latter was truly voluntary. That is precisely what this court ruled when it stated that "an evidentiary hearing [was] necessary to determine whether, in light of the events preceding [Wilson's] inculpatory statements to the police—most significantly, the coercive scene outside the tavern and the giving of the *Miranda* warnings at the police station—the inculpatory statements used against [Wilson] at trial were voluntary." *Wilson,* 682 F.Supp. at 950.

Magistrate Bucklo abided that ruling when addressing Wilson's statement to Officer Dubois. She looked to the passage of time, change in location, difference in interrogators, and, most importantly, Wilson's waiver of his right to remain silent[2] in concluding that Wilson's statement to Officer Dubois was voluntary and therefore properly admitted at trial.

Wilson, however, maintains that the statement to Officer Dubois was inadmissible because without the earlier statements at the tavern the officer would not have been able to obtain the subsequent one. But, even assuming that Wilson is right as a matter of fact, this argument falters on its legal conclusion. For, as noted above, the Supreme Court has long rejected a "but for" approach to successive confession cases. *See also Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975). Instead, a subsequent confession, even one causally related to an unlawful obtained earlier one, will be admissible if the taint of the first has been so dissipated by intervening events that the "facts of one [do not] control the character of the other." *Holleman v. Duckworth,* 700 F.2d at 396.

■ Here, all of the relevant factors militate in favor of the admissibility of Wilson's statement to Officer Dubois. Wilson received the *Miranda* warnings and waived them; the two interrogations were separated by several hours; the second interrogation occurred at the police station, far removed from the coercive setting outside the tavern; and the second interrogation was conducted by officer Dubois, not Deputy Sheriff Hudson (or the private individuals who actually did the questioning outside the tavern). Accordingly, this court affirms the magistrate's ruling that Wilson's statement to Officer Dubois was admissible at trial.

When the magistrate turned to Wilson's statements to ASA Gainer, she determined

---

2. Although Wilson briefly challenges on appeal the magistrate's determination that he had not invoked his right to remain silent, he does not put much stock in this argument, for good reason. The magistrate found as a matter of fact that Wilson had affirmatively waived his rights, and this finding is amply supported by the record. Accordingly, it may not be upset by this court. *See* 28 U.S.C. § 636(c)(4) (appeal from magistrate to district court is equivalent to appeal from district court to court of appeals).

that it was not voluntary, and therefore was improperly admitted at trial, because, being merely a confirmation of what Wilson had earlier said outside the tavern, it "was clearly a result and the fruit of the first." *Wilson,* slip op. at 8 (quoting *Brown v. Illinois,* 422 U.S. at 605, 95 S.Ct. at 2262). Here, this court disagrees slightly with the magistrate's reasoning.

The fact that the statement to ASA Gainer was nothing more than a confirmation of an unlawfully obtained statement does not mean that Wilson made the later statement involuntarily. On the contrary, Wilson made this statement after his statement to Officer Dubois, and after again being apprised of his *Miranda* rights. Given that the statement to Officer Dubois was voluntary, there is no question that the statement to ASA Gainer was voluntary as well.

■ Nevertheless, Wilson's statement to ASA Gainer should not have been admitted at trial. This is so not because it was involuntary, but because it was offered solely for the purposes of bringing in Wilson's statements outside the tavern. Indeed, the subsequent statement had probative value only to the extent that the earlier statements did. Because this court has already ruled that the statements outside the tavern were inadmissible, a later statement confirming that they were made should not have been admitted either. (Had Wilson gone further and admitted to ASA Gainer that the earlier statements were true, then his statement would be a new admission, and thus admissible.)

Although Magistrate Bucklo, like this court, found that Wilson's statement to ASA Gainer was improperly admitted at his state court trial, she held that this error did not require that the writ issue here. Citing Seventh Circuit precedent holding that "[c]onstitutionally obtained confessions may render previous confessions harmless error," *Robinson v. Percy,* 738 F.2d 214, 220 (7th Cir.1984), she determined that the harmless error doctrine applied in this case. She then found that the doctrine precluded issuing the writ here because the State had proved beyond a reasonable doubt that, even without the statement to ASA Gainer,

the trial court would have rendered a guilty verdict. *See United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1019–20 (7th Cir.1987). Although this court questions the magistrate's finding that Wilson's statement to ASA Gainer was harmless, the court need not pursue this matter further, for the magistrate's ruling contains a more fundamental defect.

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court held for the first time that some constitutional errors at trial could be considered harmless, so that convictions at trials infected with such errors do not require reversal if the State can "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24, 87 S.Ct. at 828. Since that ruling, the Court has applied the harmless error doctrine to "a wide variety of constitutional errors," *Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986), and today the harmless error doctrine is not the exception but the rule. *Id.* at 578, 106 S.Ct. at 3106; *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988).

Nevertheless, the Court has repeatedly recognized, as it did in *Chapman,* "that some constitutional errors require reversal without regard to the evidence in the particular case." *Rose,* 478 U.S. at 577, 106 S.Ct. at 3106. In *Chapman,* the Court listed three examples:

> *Payne v. Arkansas,* 356 U.S. 560 [78 S.Ct. 844, 2 L.Ed.2d 975] (1958) (coerced confessions); *Gideon v. Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] (1963) (right to counsel); *Tumey v. Ohio,* 273 U.S. 510 [47 S.Ct. 437, 71 L.Ed. 749] (1927) (impartial judge).

*Chapman,* 386 U.S. at 23 n. 8, 87 S.Ct. at 828 n. 8. Although the latter two exceptions are readily explained by the fact that they so infect the trial process that it is impossible to determine the scope of their effect on the trial, *e.g., United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011, 1017–18 (7th Cir.1988), the basis for the coerced confesson exception is less clear.

Originally, this exception seemed justified by the potentially devastating impact

of a confession on the jury. 3 Lefave & Israel, *Criminal Procedure* § 26.6 at 277 (1984). In *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), however, the Supreme Court held that the admission of a confession obtained in violation of the Sixth Amendment right to counsel could be harmless. Since a confession obtained in this way will be at least as damaging to the defendant as a coerced confession, *Milton* undermines that explanation for the coerced confession exception. *United States ex rel. Thomas v. O'Leary*, 856 F.2d at 1018–19 n. 2.

Nevertheless, in the years since *Milton* the Supreme Court has repeatedly cited the coerced confession exception as extant, *see Rose*, 478 U.S. at 577, 106 S.Ct. at 3105, *United States v. Hasting*, 461 U.S. 499, 508 n. 6, 103 S.Ct. 1974, 1980 n. 6, 76 L.Ed.2d 96 (1983); *Connecticut v. Johnson*, 460 U.S. 73, 81, 103 S.Ct. 969, 974, 74 L.Ed.2d 823 (1983),[3] and in *Rose* the Court explained it on the ground that a coerced confession "abort[s] the basic trial process." *Rose*, 478 U.S. at 578 n. 6, 106 S.Ct. at 3106 n. 6. The Seventh Circuit has never ruled otherwise—*Robinson v. Percy, supra*, involved a Sixth Amendment violation—and this court has no authority to do so here.

█ As noted above, this court already has found both that the questioning outside the tavern amounted to a custodial interrogation and that the interrogation involved coercive behavior on the part of Deputy Sheriff Hudson and those who participated with him. This court has also determined that Wilson's statement to ASA Gainer should not have been admitted at trial because the statement was used for the purpose of presenting to the court the involuntary statements Wilson made outside the tavern. Given this resolution of those issues, and the fact that the improper admission of involuntary inculpatory statements can never be harmless error, this court must reverse the magistrate's ruling.

Of course, the fact that this court will grant Wilson's petition for a writ of habeas corpus does not mean that Wilson is innocent. It means, however, that he is again presumed to be innocent. The State might well choose to retry, and will be given an opportunity to do so. *See Walberg v. Israel*, 766 F.2d 1071, 1078 (7th Cir.1985).

### CONCLUSION

The magistrate's ruling denying Wilson's petition for a writ of habeas corpus is reversed. The writ will therefore issue, and the state is ordered to release Wilson in one hundred and twenty (120) days unless it has initiated a new trial within that time.

---

3. In *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), the Supreme Court held that whereas statements obtained in violation of *Miranda* may be used on cross-examination, *"any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law 'even though there is ample evidence aside from the confession to support the conviction.'" *Id.* at 398, 98 S.Ct. at 2416 (quoting *Jackson v. Denno*, 378 U.S. 368, 376, 84 S.Ct. 1774, 1780, 12 L.Ed.2d 908 (1964)). Courts and commentators have read *Mincey* as reaffirming that the admission of a coerced confession can never be harmless error, *see, e.g., United States ex rel. Thomas v. O'Leary*, 856 F.2d at 1018–19 n. 2; 3 Lefave & Israel, *Criminal Procedure* § 26.6 at 277 (1984), but that appears to read too much into the Court's holding. The Court was discussing the proper use of involuntary statements, not the effect of an improper use of such statements on a conviction. Indeed, because the Court reversed the conviction in *Mincey* on other grounds, it had no occasion to address the harmless error doctrine in that case.