Harold WILSON, Petitioner–Appellee,

v.

Michael O'LEARY, Warden, Stateville Correctional Center, Respondent–Appellant.

No. 89–2085.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 15, 1989.

Decided Feb. 7, 1990.

Frederick F. Cohn (argued), Chicago, Ill., for petitioner-appellee.

Kenneth A. Fedinets, Asst. Atty. Gen., Office of the Atty. Gen., Chicago, Ill., for respondent-appellant.

Richard S. London, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Chicago, Ill., for respondent-appellee.

Before CUDAHY, EASTERBROOK and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Early in the morning of September 20, 1980, two men accosted Deborah Carter as she entered her mother's apartment building in Chicago. They put a knife to her neck, forced her inside, ripped off her wedding rings and gold chains, tied and gagged her with her own clothing, raped her repeatedly over the course of two hours, and after pummeling her with their fists delivered one brutal kick before fleeing. Six days later Deborah Carter, her husband O'Neal Carter, Robert Rockymore (godfather to their children), and Allen Hudson (a friend), visited the Toast of the Town Tavern while searching for the thugs. Deborah Carter espied Harold Wilson and told Hudson that Wilson was one of the assailants. Hudson, an off-duty deputy sheriff, pulled his gun, flashed his badge, and told Wilson to step outside. Wilson accompanied Hudson, Rockymore, and O'Neal Carter to a vacant lot next to the tavern.

While Hudson stood by, O'Neal Carter angrily questioned Wilson. Friends of the Carters arrived from the tavern; the crowd became ugly. Hudson searched Wilson and found a gun in his boot. He turned it over to Rockymore or O'Neal Carter and left to call the police. Although Wilson denied raping Deborah Carter, by the time the police arrived he had named Anthony Dixon as the "other guy". Naming one's accomplice while denying a role does not sit

well with juries; Wilson was convicted of rape, deviate sexual assault, and armed robbery. He got 40 years. The appellate court affirmed, *People v. Wilson*, 124 Ill. App.3d 831, 80 Ill.Dec. 175, 464 N.E.2d 1158 (1st Dist.1984), and after some preliminary proceedings, 682 F.Supp. 944 (N.D.Ill. 1988), the district court issued a writ of habeas corpus, 709 F.Supp. 837 (1989), concluding that the state made forbidden use of the statement in the vacant lot.

All agree that Hudson prevented Wilson from leaving, that neither Hudson nor anyone else delivered *Miranda* warnings, and that Hudson gave a gun to either O'Neal Carter or Rockymore. Here agreement ends. At a pretrial hearing, witnesses for the state testified that although the encounter was heated, no threats were made and or force applied. Wilson and his girlfriend testified that he was struck and threatened, and that when he denied raping Deborah Carter or knowing a "Greg", he was told that he had better start naming his friends. Then, he says, he rattled off the names of several friends, including Tony Dixon. Wilson's girlfriend ran to fetch his sister, who testified that when she arrived Wilson was lying on the ground surrounded by people hurling questions. Officer Dubois, who took Wilson into custody of the police, testified that when he arrived Wilson was struggling with two men.

At the stationhouse, Dubois gave Wilson *Miranda* warnings and the two had a brief interchange, no more than five minutes. Wilson remained silent in the face of the accusation that he had raped Deborah Carter. Once again, however, Wilson gave Dixon's name. Dubois said that "I was interested in knowing the party that was involved with him", to which Wilson "said Tony was involved". Dubois asked for the full name; Wilson replied "Anthony Dixon". Later that day Wilson spoke with Assistant State's Attorney Gainer. After a fresh set of *Miranda* warnings, Wilson told Gainer that in the vacant lot he had identified "Tony" as his partner.

Prudently, the prosecutor did not use at trial the statements Wilson made outside the tavern. Officer Dubois testified to Wilson's identification of Anthony Dixon as his confederate. Gainer did not testify, but the jury was given a stipulation that if called Gainer would have testified "that [Wilson] admitted telling the men who held him … at the lounge that the 'other guy' was Tony Dixon and that he referred to Dixon as his partner." 124 Ill.App.3d at 836, 80 Ill.Dec. at 178, 464 N.E.2d at 1161.

The trial judge declined to suppress the statements to Dubois and Gainer, concluding that both were recaps of statements in the vacant lot that were voluntary and, because given in response to private rather than official questioning, not barred by *Miranda*. The conclusion that O'Neal Carter rather than Hudson did the questioning is one of historical fact, binding under 28 U.S.C. § 2254(d). The judge did not, however, make explicit findings on other disputed matters, such as whether anyone hit or threatened Wilson. As the appellate court described the findings, the trial judge concluded

> that the statements made by [Wilson] were neither involuntarily made nor the product of a police-initiated or abetted interrogation and that the complainant's husband was not acting as an agent of the State in questioning [Wilson].

124 Ill.App.3d at 840, 80 Ill.Dec. at 181, 464 N.E.2d at 1164. On this view, which the appellate court accepted, even the statements made in the vacant lot could have been used at trial. It followed, and the appellate court held, that the statements to Dubois and Gainer were admissible.

■ Although the Constitution applies only to governmental action, making *Miranda* irrelevant to private questioning, the district court held (and we agree) that the encounter in the vacant lot was not private. Hudson, a state actor, arrested Wilson in the name of Illinois, using his gun and badge, and held Wilson against his will. Police may not avoid *Miranda* by delegating the questioning to the victims of the crime or their relatives. Truly private questioning remains private even though it takes place in a jail and the police know that the relative may persuade the suspect

to say something. *United States ex rel. Church v. DeRobertis*, 771 F.2d 1015 (7th Cir.1985). But the questioning here was not private in the way a conversation between siblings in a cell (the subject of *Church*) is private. Church was under no greater constraint than any other occupant of the jailhouse and could chat with his relatives or shoo them away without penalty. Wilson had been dragged by the scruff of his neck into a vacant lot and was being detained by Hudson for O'Neal Carter's benefit. Hudson supervised this interrogation and must have indicated that he expected Wilson to sing. According to *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980), interrogation occurs when the police take actions that they "should know are reasonably likely to elicit an incriminating response from the suspect." That describes Hudson's strategy. Questioning of this kind poses exactly the risks with which *Miranda* is concerned. The statements made in the vacant lot were inadmissible under *Miranda;* whether they were also inadmissible because involuntary is a question to which we return.

After *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), obtaining a statement in violation of *Miranda* does not prevent the police from using in court later statements given after the administration of the essential warnings, provided both statements are voluntary. The district court identified the voluntariness of the statements to Dubois and Gainer as the dispositive issue and set the matter for an evidentiary hearing. 682 F.Supp. at 950. At this juncture the parties consented to the transfer of further proceedings to a magistrate under 28 U.S.C. § 636(c)(1) and also agreed that the appeal would lie to the district judge under § 636(c)(4). Magistrate Bucklo concluded that the statements to Dubois were voluntary but that the statements to Gainer were not, because while Dubois conducted a fresh interrogation, Gainer simply asked Wilson what he had told the mob. Notwithstanding that conclusion, the magistrate denied the petition for a writ of habeas corpus, holding the stipulation about the statement to Gain-

er harmless given the statement to Dubois. The district judge reversed, concluding on the basis of decisions such as *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958), and *United States v. Hasting*, 461 U.S. 499, 508 n. 6, 103 S.Ct. 1974, 1980 n. 6, 76 L.Ed.2d 96 (1983), that the use of an involuntary confession can never be harmless error. 709 F.Supp. at 842–43. We granted the state's petition for discretionary review under 28 U.S.C. § 636(c)(5).

First in line stands a jurisdictional question. A person seeking a writ of habeas corpus must obtain a certificate of probable cause in order to appeal from a district court to the court of appeals. 28 U.S.C. § 2253. The certificate is a condition of the court's jurisdiction. *Joyner v. Parkinson*, 227 F.2d 505, 508 (7th Cir.1955). See also *McCarthy v. Harper*, 449 U.S. 1309, 101 S.Ct. 827, 66 L.Ed.2d 782 (1981) (Rehnquist, Circuit Justice); *Buthy v. Commissioner of Office of Mental Health*, 818 F.2d 1046, 1052 (2d Cir.1987). Section 636(c)(4) provides that appeals from magistrates to district judges shall proceed "in the same manner as on an appeal from a judgment of the district court to a court of appeals." Wilson appealed from Magistrate Bucklo to the district judge without seeking a certificate of probable cause. If "the same manner" refers only to procedural matters such as briefing schedules, then Wilson did not need one; if § 636(c)(4) requires appeals from magistrates to track appeals from district courts in all respects, then Wilson needed a CPC.

Consents under § 636(c)(4) are sufficiently rare that no court has decided whether the petitioner needs a CPC to appeal from magistrate to district judge. We might say that to prevent the "same manner" language from spawning hundreds of nice questions, parties must proceed in *exactly* the same way as on an appeal to the court of appeals; "manner" in § 636(c)(4) incorporates at least some jurisdictional filing rules, because nothing else sets the time limit for filing a notice of appeal from the magistrate's decision. Although adjustments must be made (the Rules of Appel-

late Procedure call for papers to be filed with the clerk of the court of appeals, an insane "manner" for a case under § 636(c)(4)), these should be confined to trivia. See *Adams v. Heckler,* 794 F.2d 303 (7th Cir.1986); *Gregg v. Manno,* 667 F.2d 1116 (4th Cir.1981). On the other hand, we might say that § 2253 deals with appeals from one court to another, and that although the magistrate and district judge are different judicial officers, both are part of the same court.

We need not decide. Section 2253 does not set a time limit on obtaining a CPC.* Judge Duff issued one after the state flagged the question in its appellate brief. Although this "retroactively" creates jurisdiction, a retroactive effect is not itself sufficient to spoil the broth if, by the time the court decides, jurisdiction has been securely established. *Newman–Green, Inc. v. Alfonzo–Larrain,* —— U.S. ——, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).

▉ The only impediment to the belated CPC is that the notice of appeal transferred the case to this court, potentially blocking the district judge from taking steps of any kind. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). The principle that a case may be in only one court at a time has its exceptions, though. *United States v. Cronic,* 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, 2051 n. 42, 80 L.Ed.2d 657 (1984); *Apostol v. Gallion,* 870 F.2d 1335 (7th Cir.1989). District judges retain authority over questions not presented by the appeal and may take steps that do not present risks of duplicative action. *Apostol,* 870 F.2d at 1337–38; cf. *United States v. Hocking,* 841 F.2d 735 (7th Cir. 1988). So when the court of appeals hears an appeal from a "collateral order" the district judge may proceed with the merits; while the court of appeals hears an appeal on the merits the district judge may award

costs and attorneys' fees; there are many similar instances of dual authority over the same case. Disposing of a request for a CPC poses no risks of inconsistent authority over the same subject and cannot frustrate this court's jurisdiction: if the district court issues the CPC, this assures jurisdiction here, and if the court denies the request all is as if no request had been made. Cf. *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 199, 108 S.Ct. 1717, 1720, 100 L.Ed.2d 178 (1988). In cases decided initially by the district judge, Fed.R.App.P. 22(b) requires an appellant to seek a CPC from the district judge, commonly done after filing the notice of appeal; district judges' actions on CPCs cannot be thought blocked by the notice of appeal. *Latella v. Jackson,* 817 F.2d 12 (2d Cir.1987). Because the notice of appeal did not strip Judge Duff of the authority to issue a CPC, there is no jurisdictional obstacle to his issuance of a writ of habeas corpus.

Two more preliminary matters: what did the magistrate find?, what is our standard of review? Although Judge Duff posed the question whether the statements to the police and the prosecutor were voluntary, whether the underlying statement was voluntary has independent significance. If the replies to O'Neal Carter's questions were coerced, the state faces a higher burden than it would if the only problem with the initial questions is Hudson's failure to deliver *Miranda* warnings. The state judge found the answers voluntary, a disposition the appellate court accepted after deferential review. *Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), requires the federal judge to decide *de novo,* while accepting the state's findings on matters of historical fact. The state judge did not resolve the conflicts on most matters of fact, and we may not infer from his bottom line any particular conclusions. *United States ex rel. Cole v. Lane,* 793 F.2d 155 (7th Cir.1986). Magistrate

---

* *United States ex rel. Kreuther v. Baldwin,* 49 F.2d 262 (7th Cir.1931), followed by *United States v. Ragen,* 231 F.2d 455 (7th Cir.1956), holds that the petitioner must seek the CPC before filing the notice of appeal. These decisions were based on a version of Circuit Rule 11(f) that was rescinded in 1972. Their authority ended with that rule. Other courts of appeals have held

that in the absence of some binding local rule there is no time limit. *Latella v. Jackson,* 817 F.2d 12, 13 (2d Cir.1987); *Fitzsimmons v. Yeager,* 391 F.2d 849, 853–54 (3d Cir.1968) (en banc); *Klier v. Wainwright,* 464 F.2d 1245 (5th Cir. 1972); *Fabian v. Reed,* 707 F.2d 147, 149 (5th Cir.1983); *Garris v. Lindsay,* 794 F.2d 722, 724 n. 13 (D.C.Cir.1986).

Bucklo also left unresolved the parties' different versions of the events during the confrontation. She found the encounter coercive and the statements involuntary nonetheless. We infer that she reached this conclusion on the assumption that the facts are as the state depicts them—that Wilson was surrounded, restrained, and questioned in a hostile manner but was not roughed up. It was a conclusion she was free to reach, despite the state's argument that *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), bars the way, because the state courts held on the merits that the confession was voluntary. *Harris v. Reed*, — U.S. —, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Judge Duff's initial opinion looks in the same direction, 682 F.Supp. at 949–50.

■ We held in *United States v. Hawkins*, 823 F.2d 1020, 1022 (7th Cir.1987), that although appellate review of the effectiveness of waivers under *Miranda* is deferential, review of findings on the voluntariness of confessions is *de novo*. We thought this standard implied by the holding in *Miller v. Fenton* that voluntariness is a question of "law" for purposes of collateral review, excluding the presumption of correctness that § 2254(d) extends to state courts' findings of fact. This aspect of *Hawkins* has been questioned within the circuit, on the ground that voluntariness might properly be characterized as a question of law to facilitate independent federal review while being treated as a question of fact for purposes of deciding who among federal judges is best situated to resolve disputes. *Weidner v. Thieret*, 866 F.2d 958, 960–61 (7th Cir.1989); *Sotelo v. Indiana State Prison*, 850 F.2d 1244, 1253–55 (7th Cir.1988) (concurring opinion). Cf. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir.1989) (en banc), holding that even questions of "law" may be reviewed deferentially when they involve only fact-specific applications. In *Weidner*, in *United States v. Rodriguez*, 888 F.2d 519, 522 n. 1 (7th Cir.1989), and again today we leave the question up in the air. We think deferential review appropriate when this court exercises discretionary review, no matter the standard used on appeals as of right.

Sections 636(c)(4) and (5) provide for initial decision by a magistrate, appeal as of right to the district judge, and discretionary review in the court of appeals. The district judge takes the place of the court of appeals. If *de novo* review on voluntariness matters is appropriate, the district court provides that review. We have the case much as the Supreme Court does on certiorari. After two courts have given a fact-bound question close examination, the Supreme Court's review is deferential. E.g., *Burger v. Kemp*, 483 U.S. 776, 785, 107 S.Ct. 3114, 3121, 97 L.Ed.2d 638 (1987), employing deferential review for a conclusion that counsel rendered effective assistance—which like voluntariness of a confession is a "mixed" issue of law and fact. The parties have had their disputes about what happened outside the tavern reviewed by two federal judicial officers, which is enough. We shall examine findings and characterizations of fact deferentially.

■ The magistrate's conclusion that the initial interrogation was coercive and the statements involuntary is not clearly mistaken. Wilson was dragged into a vacant lot, surrounded by friends of the victim, and grilled by her enraged husband; the deputy sheriff handed either the husband or a friend a pistol and left the scene. Whether or not he was struck, Wilson was entitled to fear for his life. It follows that the statement to prosecutor Gainer could not be used at trial. Gainer did not conduct an interview distinct from the coerced confession. He instead asked Wilson what he had told the mob, and the answer was laid before the jury. There is a world of difference between

Q: Who was your accomplice?
A: Tony Dixon.

and

Q: While in terror for your life, did you say that Tony Dixon was your accomplice?
A: Yes.

The latter is an indirect way of getting the coerced confession itself into evidence. Even if the statement is voluntary (in the sense that Gainer did not have to pressure Wilson to tell him what transpired in the vacant lot), it has no independent force.

Gainer acted as the waystation for the confession to the mob, and the relayed confession is no more admissible than the original.

Magistrate Bucklo thought the judgment could stand because this confession did not add to the (voluntary) statement Wilson made to Dubois. Judge Duff disagreed. The state's best chance was to persuade us that Magistrate Bucklo is correct—that although the use of an involuntary confession ordinarily cannot be harmless error, the rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966), applies when the involuntary confession duplicates a voluntary one properly admitted. Astoundingly, the state did not mention harmless error in its opening brief. It tried instead to persuade us that there was nothing wrong with any of the statements. It got 'round to harmless error at page 19 of its reply brief, and even then it ignored the "automatic reversal" cases on which Judge Duff relied.

Circuit Rule 28(f) provides that "[a] reply brief shall be limited to matter in reply." Harmless error is a ground for reversal, not a reply to Wilson's arguments. All arguments for reversal must appear in the opening brief, so that the appellee may address them. We have consistently refused to consider arguments withheld until the reply brief. *FTC v. World Travel Vacation Brokers, Inc.,* 861 F.2d 1020, 1025–26 (7th Cir.1988); *Duggan v. Board of Education,* 818 F.2d 1291, 1293 (7th Cir.1987); *In re Bear,* 789 F.2d 577, 579–80 (7th Cir. 1986); *United States v. Goodwin,* 770 F.2d 631, 640 n. 4 (7th Cir.1985); *Beerly v. Department of the Treasury,* 768 F.2d 942, 949 (7th Cir.1985); *Myron v. Chicoine,* 678 F.2d 727, 732 n. 8 (7th Cir.1982); *Bugg v. Industrial Workers Local 507,* 674 F.2d 595, 598 n. 4 (7th Cir.1982); *Wood v. Worachek,* 618 F.2d 1225, 1228 n. 1 (7th Cir. 1980); *United States v. Michigan Carton Co.,* 552 F.2d 198, 201 (7th Cir.1977); *Finsky v. Union Carbide Corp.,* 249 F.2d 449, 459 (7th Cir.1957). The state has not offered a reason for omitting this question from its opening brief. We find it inexplicable. Procedural rules apply to the government as well as to defendants. Illinois has forfeited what would have been its best argument. If as a result a violent offender goes free, the Attorney General of Illinois must understand where the responsibility lies—with his own staff.

■ Because the state will want to use the statements to Dubois if it retries Wilson, we address his contention that these statements too are off limits. It is not at all clear that Wilson has preserved this contention. The district court's decision allowed the state to retry Wilson and make use of the statements to Dubois. Wilson did not file a notice of appeal, and his submissions concerning these statements are not so much alternative grounds in support of the district court's judgment as they are arguments for an alteration in his favor. Alteration is impossible without a notice of appeal, which Wilson did not file. *Federal Energy Administration v. Algonquin SNG, Inc.,* 426 U.S. 548, 560 n. 11, 96 S.Ct. 2295, 2302 n. 11, 49 L.Ed.2d 49 (1976). See Robert L. Stern, *When to Cross–Appeal or Cross–Petition—Certainty or Confusion?,* 87 Harv.L.Rev. 763 (1974). Yet the *judgment* does not specify whether the state may use the statements to Dubois; the district court issued a conditional writ of habeas corpus without elaboration; only the opinions take up the matter, and one need not file a notice of appeal to challenge statements in an opinion. *Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525 (7th Cir.1988). Because accepting Wilson's argument would not necessarily expand the relief granted in the judgment, the arguments might be open on appeal. Cf. *United States v. New York Telephone Co.,* 434 U.S. 159, 166 n. 8, 98 S.Ct. 364, 369 n. 8, 54 L.Ed.2d 376 (1977).

No matter. The magistrate concluded that the statements to Dubois were independent of those to O'Neal Carter, the district judge agreed, and we will not disturb this concurrent finding. Dubois removed Wilson from the vacant lot, eliminating the pressure to speak. The chain of events was broken. When he spoke with Dubois after explicitly waiving the entitlements established by *Miranda,* Wilson was under no pressure of any kind. This is not to say that *Miranda* warnings themselves attenuate the effects of coercion; *Elstad* applies only to cases in which the sole defect in the

initial confession was the omission of *Miranda* warnings. Nonetheless, *Elstad* did not question cases holding that wringing an involuntary confession out of a suspect does not perpetually disable him from giving a voluntary statement. E.g., *Clewis v. Texas*, 386 U.S. 707, 710, 87 S.Ct. 1338, 1340, 18 L.Ed.2d 423 (1967), cited with approval in *Elstad*, 470 U.S. at 310, 105 S.Ct. at 1293; *Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); *United States v. Bayer*, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947); *Lyons v. Oklahoma*, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944). If the police end the coercion and dissipate any continuing force it may have, they may interrogate under humane circumstances. *Holleman v. Duckworth*, 700 F.2d 391 (7th Cir.1983). Wilson surely recognized the difference between Dubois, who treated him "by the book", and the crowd inflamed by the irate husband; after Dubois spirited Wilson out of danger and the terror had passed, the state was free to ask and Wilson to answer.

AFFIRMED.